In re Helen WOOD, Debtor.

Helen Wood, Appellant,

v.

Premier Capital, Inc., Appellee.

BAP No. MB 02–062.
Bankruptcy No. 99–17766–CJK.

United States Bankruptcy Appellate Panel
of the First Circuit.

April 10, 2003.

David W. Ostrander, Northampton, MA, Robert L. Holloway, Jr., Kathleen P. Dwyer, Danvers, MA, on brief for Appellant, Helen Wood.

Thomas H. Curran, Patricia A. Remer, Boston, MA, on brief for Appellee, Premier Capital, Inc.

Before VOTOLATO, DEASY, and BROWN, United States Bankruptcy Appellate Panel Judges.

## JUDGMENT

This cause came to be heard from the United States Bankruptcy Court for the District of Massachusetts.

Upon consideration whereof, and in accordance with the Opinion entered on April 10, 2003, it is now hereby **ORDERED AND ADJUDGED** that the September 12, 2002 Order of the Bankruptcy Court sustaining Premier Capital Inc.'s objection to the Debtor's claim of exemption in her workers' compensation settlement and disallowing the exemption, is hereby **AFFIRMED.**

BROWN, Bankruptcy Judge.

## INTRODUCTION

This matter is before the Bankruptcy Appellate Panel (the "Panel") on an appeal from a September 12, 2002 order[1] of the United States Bankruptcy Court for the District of Massachusetts sustaining the objection by Premier Capital, Inc. ("Premier") to the claim of exemption by Helen Wood (the "Debtor") regarding a workers' compensation settlement pursuant to Mass. Gen. Laws ch. 152, § 47. On ap-

peal, the Debtor asserts, among other things, that the bankruptcy court erred in sustaining Premier's objection to the Debtor's claim of exemption in the workers' compensation claim and settlement proceeds because: (i) the workers' compensation claim was not an asset of the bankruptcy estate; and (ii) even if the workers' compensation claim was an asset of the bankruptcy estate, it was an exempt asset. For the reasons set forth herein, the Panel affirms.

## STATEMENT OF FACTS

On September 22, 1999 (the "Petition Date"), being represented by counsel (hereinafter, "bankruptcy counsel"), the Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code.[2] The Debtor timely filed her schedules and statement of financial affairs. On Schedule B—Personal Property, the Debtor disclosed a variety of assets, but did not disclose the existence of a workers' compensation claim. At the § 341 meeting of creditors on October 19, 1999, the Debtor was questioned extensively regarding her employment by a nursing home in Holyoke, Massachusetts, and her reasons for leaving that employment. During the course of the questioning, the Debtor did not mention any workplace accidents or any potential workers' compensation claims.

In May 2000, the Debtor retained the law firm of Ardiff & Morse, P.C. ("Special Counsel") to represent her in ongoing liti-

---

1. In her Notice of Appeal, the Debtor appeals from the "final Order of the Bankruptcy Court entered on September 12, 2002 sustaining creditor Premier Capital, Inc.'s Objection to the Debtor's claim of exemption [of a workers' compensation claim]." Although the referenced Order was signed on September 11, 2002, it was entered on the docket on Sep-

tember 12, 2002. Therefore, we refer to said Order as the "September 12, 2002 Order."

2. Unless otherwise indicated, all references to the "Bankruptcy Code" or the "Code" and all references to statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.*

gation involving Premier. On April 9, 2001, the Chapter 7 Trustee filed a report of no distribution.

In October 2000, unbeknownst to the bankruptcy court, the Chapter 7 Trustee, the Debtor's bankruptcy counsel or Special Counsel, the Debtor consulted with another attorney in Springfield, Massachusetts, regarding a potential workers' compensation claim involving two pre-petition falls at work, one in June 1999 and another in August 1999. On November 7, 2000, the Debtor filed a claim with the Department of Industrial Accidents, asserting that she became disabled and unable to work on November 7, 1999. She did not inform the bankruptcy court or the Chapter 7 Trustee that she filed such a claim; nor did she inform her own bankruptcy counsel or Special Counsel.[3] On February 13, 2001, an administrative judge for the Department of Industrial Accidents entered an order directing the insurance carrier for the Debtor's former employer to pay the Debtor $264 per week beginning January 1, 2001, and continuing until a full hearing could take place. In November, 2001, the Debtor settled her workers' compensation claim with her former employer and received a lump sum settlement of $25,000. After attorney's fees and expenses, the Debtor received a net amount of $21,218.77. The Debtor never informed her bankruptcy counsel, Special Counsel or the Chapter 7 Trustee of the settlement, nor did she seek bankruptcy court approval of the settlement.[4]

On January 18, 2002, after she had settled her workers' compensation claim and received the settlement proceeds, the Debtor filed a Motion to Amend Schedules B and C. The proposed amendments added the workers' compensation settlement and claimed an exemption of the entire amount. Both the Chapter 7 Trustee and Premier opposed the Motion to Amend Schedules to the extent the Debtor was seeking to claim any exemption in the settlement proceeds. In its opposition, Premier argued: (1) that the Debtor acted in bad faith by failing to disclose the workers' compensation claim for more than two years after the Petition Date; and (2) that the Debtor's failure to disclose was prejudicial to the bankruptcy estate because the creditors and the Chapter 7 Trustee did not have an opportunity to object to the settlement. *See* App. at 018.

On February 1, 2002, the Debtor's Special Counsel filed a report with the bankruptcy court stating that he was holding the net settlement proceeds. On March 1, 2002, the Debtor filed a Motion to Supplement the Record seeking to introduce into evidence a certified copy of the complete workers' compensation records maintained by the Department of Industrial Accidents Board.

On March 5, 2002, the bankruptcy court held a hearing on the Motion to Amend Schedules and the Motion to Supplement the Record. The Debtor was not present at the hearing due to poor health. At the hearing, the bankruptcy court identified the issue before it with respect to the Motion to Amend Schedules as whether the Debtor's failure to list the workers' compensation claim on her schedules was "an innocent oversight" or whether it was

---

3. In fact, the Debtor's bankruptcy counsel claims that he did not learn that the Debtor had filed the workers' compensation claim until he was advised of the same in a letter from Special Counsel on May 23, 2001, more than six months after the filing. *See* App. at 29–30.

4. The Debtor's bankruptcy counsel claims that he did not learn about the settlement until late December 2001, or early January 2002, when he was advised of the same by Special Counsel. *See* App. at 030, 202.

"an intentional bad faith omission." *See* App. at 209. The bankruptcy court noted, however, that such an issue is usually resolved by holding an evidentiary hearing where the parties would have an opportunity to question the Debtor about what she knew and what her intentions were in failing to list the workers' compensation claim. The parties informed the bankruptcy court that it would be extremely difficult to conduct an evidentiary hearing due to the Debtor's poor health, her confinement to a wheelchair, and her inability to speak. Nonetheless, the bankruptcy court concluded that an evidentiary hearing was necessary, unless the parties stipulated that, under the circumstances, an evidentiary hearing would be futile. Consequently, the bankruptcy court ordered Premier and the Chapter 7 Trustee to file, on or before March 19, 2002, statements regarding their respective positions on the necessity of an evidentiary hearing on the Debtor's Motion to Amend Schedules. Both Premier and the Chapter 7 Trustee notified the bankruptcy court that they waived their right to an evidentiary hearing due to the deteriorated physical condition of the Debtor, provided they be allowed to serve the Debtor with special interrogatories relating to the workers' compensation claim.

On April 9, 2002, the bankruptcy court allowed the Debtor's Motion to Amend Schedules, setting May 20, 2002 as the deadline for objections to the Debtor's claimed exemption in the settlement proceeds. It also granted the Debtor's Motion to Supplement the Record. Premier filed a timely objection to the claimed exemption, alleging that the claim was property of the estate, that the Debtor had improperly concealed the claim and settlement from her creditors, and, therefore, that the Debtor was not entitled to exempt the settlement.

On September 12, 2002, the bankruptcy court issued a Memorandum of Decision and an order sustaining Premier's objection to the Debtor's claim of exemption in the workers' compensation settlement. The bankruptcy court ruled that nothing excused the Debtor's failure to notify the Chapter 7 Trustee of her workers' compensation claim in November 2000 when she filed it, or in November 2001, when she settled it. The bankruptcy court also concluded that the Debtor "impermissibly waited fourteen months to disclose the existence of the claim and seek to amend her schedules." *See* App. at 177. Accordingly, the bankruptcy court disallowed the Debtor's claimed exemption in the net proceeds of the workers' compensation claim. The Debtor filed a timely Notice of Appeal from the September 12, 2002 order.

### *JURISDICTION*

The Panel has jurisdiction to hear appeals from "final judgments, orders, and decrees" pursuant to 28 U.S.C. § 158(a)(1) or "with leave of the court, from interlocutory orders and decrees" pursuant to 28 U.S.C. § 158(a)(3). *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646. An interlocutory order "'only decides some intervening matter pertaining to the cause, and which requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)).

An order sustaining an objection to a debtor's claimed exemption is a final order. *See Howe v. Richardson (In re Howe)*, 232 B.R. 534, 535 (1st Cir. BAP), *aff'd*, 193 F.3d 60 (1st Cir.1999); *see also In re*

*Yonikus,* 996 F.2d 866, 868 (7th Cir.1993); *McNeilly v. Geremia (In re McNeilly),* 249 B.R. 576, 579 (1st Cir. BAP 2000) (bankruptcy court's order sustaining the trustee's objection to the debtor's claimed exemption in tenancy by the entirety property was a final order); *Fracasso v. Reder (In re Fracasso),* 222 B.R. 400 (1st Cir. BAP 1998) (stating that an order sustaining an objection to exemption is a reviewable final order). "Although other issues may remain for resolution in a case after the determination of the debtor's claimed exemptions, orders granting or denying exemptions are appealable as final orders under 28 U.S.C. § 158(a)." *Howe,* 232 B.R. at 535.

### STANDARD OF REVIEW

■ Appellate courts reviewing an appeal from a bankruptcy court generally apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See, e.g., Prebor v. Collins (In re I Don't Trust),* 143 F.3d 1, 3 (1st Cir.1998); *Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.),* 132 F.3d 104, 107 (1st Cir.1997); *TI Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995). Generally, a debtor's entitlement to a bankruptcy exemption involves a legal question and is reviewed *de novo. See Howe,* 232 B.R. at 535; *see also Yonikus,* 996 F.2d at 868.

### DISCUSSION

**I. Workers' Compensation Claim as Property of the Estate.**

In her brief, the Debtor first argues that the workers' compensation claim was not property of the estate because "Mrs. Wood had no claim under the law to worker's [sic] compensation until she was no longer working (the post-petition date of November 7, 1999) and until her 'incapacity to

work' was determined." *See* Debtor's Brief at 17–18.

■ When a bankruptcy petition is filed, virtually all property of the debtor at that time becomes property of the debtor's bankruptcy estate. A bankruptcy estate includes, with limited exception, "all legal or equitable interests of the debtor in property" which the debtor holds as of the commencement of the case. *See* 11 U.S.C. § 541(a)(1). A debtor's contingent interest in future income has consistently been found to be property of the estate. *See Yonikus,* 996 F.2d at 869. "In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *Id.* (citations omitted). The question of whether an interest claimed by the debtor is "property of the estate" is a federal question to be decided by federal law; however, courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case. *Id.*

■ Although the Debtor asserts that she had no workers' compensation claim under state law until she was no longer working (*i.e.,* the post-petition date of November 7, 1999), the bankruptcy court concluded that the Debtor's interest in the workers' compensation claim as of the Petition Date was sufficient to bring it into her bankruptcy estate under § 541. We similarly conclude that the Debtor had sufficient interest in her workers' compensation claim at the commencement of her bankruptcy case to bring it into the estate. *See id.* It is undisputed that the Debtor had two pre-petition falls at work, one in June 1999 and another in August 1999, and that those falls gave rise to her workers' compensation claim filed with the Department of Industrial Accidents in November 2000. Even if the workers' compensation

claim was a future, contingent and/or speculative interest of the Debtor, under § 541 it constituted property of her estate.

■ Moreover, we find that the Debtor has waived her right to assert that the workers' compensation claim was not property of the estate for three reasons. First, the Debtor clearly admitted in her Motion to Amend Schedules that the workers' compensation claim arose pre-petition. Therefore, she cannot now argue that the claim is not property of the bankruptcy estate. In her Motion to Amend Schedules, the Debtor sought to amend Schedules B and C, "for the purpose of disclosing a workers compensation claim which *accrued pre-petition ...*" *See* App. at 6 (emphasis added). Moreover, in the Motion to Amend Schedules, the Debtor stated: "Although the settlement has been made over two years post-petition, the genesis of the settlement has *pre-petition roots* due to the Debtor's allegation that her injuries resulted from the fall at her workplace on June 23, 1999." *Id.* at 7, ¶ 12 (emphasis added). The Debtor clearly characterized the claim as a pre-petition claim and, for that reason, should not be permitted to argue on appeal that it was not property of the estate.

Second, by claiming an exemption in the workers' compensation settlement proceeds, the Debtor impliedly concedes that the claim is property of the estate, since a debtor cannot claim an exemption in property that is not property of the estate. Since the Debtor filed an amendment to Schedule B, and the bankruptcy court order allowing the amendment was final and not appealed, the claim set forth in Amended Schedule B is property of the estate. Clearly, if a debtor lists an asset in her schedules and then claims an exemption in that asset, she must consider the asset to be property of the estate. Otherwise, there would be no reason to list

the property and the debtor would not need to claim an exemption in it.

Third, Debtor's counsel conceded at oral argument that the claim was property of the estate, or, at a minimum, that the issue was not central to this appeal:

> JUDGE DEASY: But you're missing my point. My point is this: It was the debtor who went to the Court and said, "I want this listed as property of the estate and then exempted," and the Court said, "Fine," and that became a final order.
>
> Mr. HOLLOWAY: Yes.
>
> JUDGE DEASY: Now how does the debtor get to come in here today and suggest it's not property of the estate? I mean, I don't understand that, but maybe there's some explanation I'm missing.
>
> MR. HOLLOWAY: I'm not—I'm not saying, Your Honor, that the—let me say this—whether or not it was or was not property of the estate is not central. *Assume it is property of the estate, and I'm not debating that point with the Court.*

Tr. Appellate Argument at 9 (Jan. 15, 2003) (emphasis added). Hence, there is no dispute that the Debtor's workers' compensation claim is, indeed, property of the estate.

Therefore, seeing no error in the bankruptcy court's factual findings or legal conclusions concerning its treatment of the workers' compensation claim as property of the estate, we will consider its denial of the exemption claim.

## II. Workers' Compensation Claim as Exempt Property.

As noted above, § 541 defines property of the estate broadly to include all of a debtor's legal and equitable interests. *See* 11 U.S.C. § 541(a)(1). Notwithstanding

the breadth of § 541, § 522 allows a debtor to exempt certain property from the bankruptcy estate that the trustee would otherwise have available to satisfy the claims of creditors. *See* 11 U.S.C. § 522. Therefore, although virtually all assets of a debtor initially become property of the bankruptcy estate, certain property may be pulled out of the estate if it qualifies for exemption under § 522. The Bankruptcy Code permits a debtor to retain property of the estate that is deemed exempt from execution under either state or federal law.[5]

### A. Concealment.

■■■ Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate. *In Matter of Yonikus*, 974 F.2d 901, 904 (7th Cir.1992). Generally, if a debtor intentionally conceals or fails to disclose estate property, the debtor will be barred from claiming such property as exempt, even if the property would have been exempt had it been properly scheduled and claimed. *See id.* at 871; *Matter of Doan*, 672 F.2d 831, 833 (11th Cir.1982).

■■■■ Intent to conceal is a factual determination to be made by the bankruptcy court based upon the evidence presented and inferences drawn therefrom at trial. *Yonikus*, 996 F.2d at 872. Bad faith is generally determined from an examination of the relevant surrounding circumstances. *See In re Keach*, 243 B.R. 851 (1st Cir. BAP 2000). A reviewing court should overturn a bankruptcy court's factual determinations regarding bad faith only if they are clearly erroneous. *See Yonikus*, 996 F.2d at 873.

In *Yonikus*, the Seventh Circuit upheld the bankruptcy court's denial of the debtor's claim of exemption of a workers' compensation claim after the debtor had attempted unsuccessfully to conceal the claim. The debtor sustained injuries in a work-related accident, filed a claim for workers' compensation and initiated a personal injury lawsuit. One month later, the debtor filed a voluntary bankruptcy petition. The debtor engaged different lawyers to represent him in each legal matter and did not disclose the personal injury or compensation claims to his bankruptcy attorney. In his bankruptcy schedules, the debtor did not list the workers' compensation claim or the personal injury claim as assets of the estate or as exempt property. After the debtor was granted a discharge, he received his workers' compensation award and the settlement proceeds from the personal injury claim, neither of which were disclosed to the trustee. Once the trustee became aware of the personal injury action, he filed an adversary proceeding seeking revocation of the debtor's discharge. The bankruptcy court found that the debtor knowingly and fraudulently attempted to conceal the asset, and revoked his discharge. *Id.* Undaunted, the debtor moved to amend his schedules to claim the workers' compensation benefits as exempt property, but the bankruptcy court disallowed the exemption, holding that "fraudulent concealment of an asset works as a forfeiture of exemption rights." *Id.* at 868.

The Seventh Circuit affirmed, finding the following to be sufficient evidence of the debtor's bad faith: (i) failing to list his

---

**5.** Section 522(b) permits debtors to choose between the federal bankruptcy exemptions listed in § 522(d), or the exemptions provided by their state of residence together with those provided by federal, nonbankruptcy law. If a state has "opted out" of the federal exemption scheme, its resident debtors are restricted to the latter option. Massachusetts permits its debtors to elect between the state and federal exemption alternatives. In the present case, the Debtor chose the exemption scheme available under Massachusetts law.

workers' compensation benefits and the personal injury action as assets in his bankruptcy schedules; (ii) failing to notify his personal injury attorney of the bankruptcy, and failing to inform his bankruptcy attorney of the workers' compensation and personal injury claims; and (iii) failing to inform the trustee about the proceeds received from the personal injury and workers' compensation claims. The Seventh Circuit concluded, therefore, that based upon the record and the debtor's conduct, it could reasonably be inferred that the debtor had no intention of reporting the workers' compensation benefits and personal injury settlement to the bankruptcy court. *Id.* at 873.

In the present case, the Debtor argues that the record does not support a finding that she intentionally failed to disclose her workers' compensation claim. We disagree. The bankruptcy court concluded that there was sufficient evidence from which it could find that the Debtor had deliberately concealed the workers' compensation claim until after the claim had been settled and the settlement proceeds disbursed. The Debtor's accident occurred on June 23, 1999, approximately three months prior to the Petition Date. However, the Debtor did not include the workers' compensation claim in her schedules, nor did she disclose her injury at the § 341 meeting despite extensive questioning by the Trustee about her employment and her reasons for terminating employment. Moreover, when the Debtor filed her claim with the Board of Industrial Accidents in November 2000, she did not reveal her claim to her bankruptcy attorney, Special Counsel, or to the Trustee. The Debtor's bankruptcy counsel did not learn about the claim until six months after it had been filed.

On November 5, 2001, the Debtor settled her workers' compensation claim, without disclosing the claim or the settlement to her bankruptcy counsel, the Trustee or the bankruptcy court. In fact, the Debtor never sought the authority of the Trustee to settle the claim, nor did she seek bankruptcy court approval of the settlement. The Debtor did not disclose the claim and settlement until she filed her Motion to Amend Schedules on January 18, 2002, more than fourteen months after the Petition Date. Although the Debtor argues that she did not conceal the claim, as evidenced by the fact that she "voluntarily" chose to amend her schedules, it is important to note that the Debtor did not even inform her own bankruptcy counsel of the settlement, despite his attempts to contact her after discovering that she had filed a claim. Rather, Debtor's bankruptcy counsel learned of the settlement through Special Counsel; it was only then that Debtor's bankruptcy counsel proceeded to file the Motion to Amend Schedules.

Even if it were true that the Debtor's failure to mention the claim in her schedules or at the § 341 meeting was innocent because she was unaware at that time that she would file such a claim, the Debtor still failed to notify the Trustee in November 2000, when she did file the claim, or in November 2001, when she settled the claim.

The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether attractive .... When it is hard to detect an effort to evade the law, the penalty must exceed the profits of the evasion. So, here, it is too late for [the Debtor] to start over and ask the court to apportion the proceeds as if ... she had filed a complete schedule in the first instance.

*Payne v. Wood,* 775 F.2d 202, 205 (7th Cir.1985), *cert. denied,* 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986).

The bankruptcy court properly analyzed all the testimony, documentary evidence and other items contained in the record before ultimately finding that the Debtor had intentionally concealed the workers' compensation claim. Thus, the Panel is precluded from finding that the bankruptcy court's conclusions were clearly erroneous. Beyond that, however, we also feel that the denial of the exemption is fully supported by the evidence.

### B. *Motion to Amend Schedules and Bad Faith.*

The Debtor argues that by allowing the Motion to Amend Schedules, the bankruptcy court implicitly found a lack of "bad faith" on the part of the Debtor—otherwise, the bankruptcy court would have been compelled to deny the Motion to Amend Schedules, particularly since the basis for Premier's objection to the Motion to Amend Schedules was an allegation of "bad faith" on the part of the Debtor. Premier argues that the bankruptcy court allowed the Debtor to amend her schedules without making any findings as to her bad faith.

■■■■■ We begin our consideration by recognizing that Bankruptcy Rule 1009(a) permits a debtor to amend his or her schedules "as a matter of course at any time before the case is closed." Fed. R. Bankr.P. 1009(a).[6] There are two established exceptions to a debtor's right to amend schedules: a bankruptcy court has

the discretion to deny an amendment to schedules based upon a showing of either: (1) bad faith; or (2) prejudice to creditors or third parties. *See Snyder v. Rockland Trust Co. (In re Snyder),* 279 B.R. 1, 6 (1st Cir. BAP 2002); *see also Doan,* 672 F.2d at 833. "A mere allegation by an objector of bad faith is insufficient. Bad faith and/or prejudice must be shown by clear and convincing evidence." *In re St. Angelo,* 189 B.R. 24, 26 (Bankr.D.R.I.1995) (citations omitted). Contrary to the Debtor's assertion, simply because a bankruptcy court has the discretion to deny a debtor's request to amend her schedules due to bad faith, it is not compelled to do so.[7]

■■■■ At the hearing on the Motion to Amend Schedules, the bankruptcy court noted that it was difficult to decide the issue of bad faith without personally hearing from and observing the Debtor. As a result, the bankruptcy court ordered Premier and the Chapter 7 Trustee to file statements regarding their respective positions on the necessity of an evidentiary hearing. Based on these facts, it is clear that the bankruptcy court did not make any finding on the issue of bad faith at the initial hearing, but rather preserved the issue for an evidentiary hearing.

In response to the bankruptcy court's order, Premier filed a statement waiving an evidentiary hearing, asserting that due to the Debtor's deteriorating medical condition, an evidentiary hearing would be extremely difficult to conduct and no purpose would be served. Only after considering Premier's statement did the bankruptcy court enter an order allowing the

---

6. Pursuant to MLBR 1009–1, a debtor who chooses to amend a schedule of exemptions "after the deadline for objecting to the exemption" must do so by motion. The Debtor complied with MLBR 1009–1 by seeking amendment pursuant to her Motion to Amend Schedules.

7. A discretionary act or duty involves "an exercise of judgment and choice, not an implementation of a hard-and-fast rule." BLACK'S LAW DICTIONARY 479 (7th ed.1999).

Motion to Amend Schedules and granting interested parties the right "to file an objection to exemption . . ." There is no indication that the bankruptcy court considered the bad faith issue when entering that order. Rather, it is reasonable to imply that, by specifically granting interested parties the right to object to the claimed exemption and permitting Premier the serve the Debtor with special interrogatories relating to the workers' compensation claim in lieu of an evidentiary hearing, the bankruptcy court was, in fact, preserving the bad faith issue for consideration in connection with any objections to the Debtor's claimed exemption.

■ Even if the bankruptcy court implicitly determined a lack of bad faith in connection with the Motion to Amend Schedules, that does not preclude the bankruptcy court's consideration of bad faith or prejudice to creditors in connection with a subsequent objection to an exemption. "The right to amend schedules to add exemptions is not the same as the right to the exemption." *Knupfer v. Wolfberg (In re Wolfberg)*, 255 B.R. 879, 883 (9th Cir. BAP 2000). Therefore, "the mere fact that [the debtor] can claim an exemption does not necessarily mean that [the debtor] is entitled to it." *Id.* This conclusion is supported by other cases where bankruptcy courts have allowed a motion to amend the debtor's schedules to include an asset, but subsequently denied the debtor's claimed exemption. *See, e.g., Yonikus*, 996 F.2d at 866; *see also St. Angelo*, 189 B.R. at 28 (after allowing motion to amend schedules to claim exemption in personal injury settlement, court sustained trustee's objection to debtor's claim of exemption, finding debtor had acted in bad faith when he failed to disclose personal injury claim as an asset); *cf., Snyder*, 279 B.R. at 6 (although court found that creditor's objection to debtor's

motion to amend schedules on prejudice grounds was properly raised, the court allowed the motion to amend but preserved the prejudice defense as one the creditor could assert in opposition to the motion to avoid lien).

### *CONCLUSION*

For the reasons set forth above, this Panel finds that the bankruptcy court did not err in sustaining Premier's objection to the Debtor's claim of exemption in her workers' compensation settlement and disallowing the exemption. Accordingly, the bankruptcy court's order is, in all respects, AFFIRMED.