Brian J. SULLIVAN, Debtor.

Stephanie R. Lussier, Plaintiff–
Appellee,

v.

Brian J. Sullivan, Defendant–Appellant.

BAP No. MB 11–020.
Bankruptcy No. 08–18652–JNF.
Adversary No. 09–01211–JNF.

United States Bankruptcy Appellate Panel
for the First Circuit.

Sept. 8, 2011.

Herbert Weinberg, Esq., North Andover, MA, on brief for Defendant–Appellant.

Stephanie Lussier, pro se, on brief for Plaintiff–Appellee.

Before VOTOLATO, KORNREICH, and TESTER, United States Bankruptcy Appellate Panel Judges.

VOTOLATO, Bankruptcy Judge.

Brian J. Sullivan (the "Debtor") appeals the bankruptcy court order denying his

discharge under 11 U.S.C. § 727(a)(4)(A).[1] On appeal, the Debtor contends that the bankruptcy court erroneously denied his discharge on the grounds that: (1) Stephanie R. Lussier ("Lussier") lacked standing to object to his discharge; (2) he was denied his Sixth Amendment right to effective assistance of counsel; and (3) the facts in the record do not support the judgment. Based upon its review of the evidence, the applicable law, and the written and oral arguments, the Panel concludes that the order of the bankruptcy court should be **AFFIRMED.**

## BACKGROUND

### I. Factual and Procedural History

For some time prior to 2006, the Debtor, an attorney, and Lussier had a domestic relationship and they are parents to a child. While they were still involved, Lussier loaned the Debtor approximately $36,000 as a down payment in his attempt to purchase a Florida condominium. That sale did not take place. Lussier also made a $100,000 deposit toward their joint purchase of property located at 121 Albatross Road (the "Property") in Quincy, Massachusetts. By May 2006, the Debtor and Lussier had ended their relationship, deeded the Property to the Debtor, and refinanced the mortgage, so that Lussier was no longer liable on the promissory note and mortgage. During the refinancing, the Debtor wrote Lussier a check for money he owed her for various deposits and expenses on the Property.

In October 2006, Lussier filed a state court complaint to recover damages regarding the loan for the Florida property, and on January 11, 2007, she obtained a writ of attachment on the Property in the amount of $100,000.[2] A trial was scheduled, but has been held in abeyance pending the outcome of this adversary proceeding.

On November 13, 2008, the Debtor filed a chapter 7 petition and listed, among other assets, a Citizens Bank account in the amount of $300, and a 1970 Chevrolet Chevelle estimated at $9,500 in value. In the category "furs and jewelry," the Debtor stated "none." On Schedule C, the Debtor claimed the bank account and the Chevelle as exempt under § 522(d)(2) and (d)(5), and on Schedule E, stated that he had a domestic support obligation, and included Lussier as the holder of a $2,015 claim. On Schedule F, the Debtor listed Lussier as the holder of a $100,000 claim, adding that the claim was "undetermined and subject matter of pending litigation." The Debtor did not designate either of Lussier's claims as "contingent," "unliquidated," or "disputed".

On February 5, 2009, at a § 341 meeting of creditors, Lussier informed the trustee that the Debtor had failed to include on Schedule B a Rolex watch she had given him as a gift. The Debtor, who was wearing the Rolex, held it up and, at the chapter 7 trustee's request, turned it over to his counsel.

---

1. Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§ " refer to Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.,* as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8, 119 Stat. 37.. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure.

2. The record does not reflect why the state court issued an attachment of $100,000 for a debt of $36,000. At oral argument, Lussier explained that the attachment on the Property encompassed the down payment for the Florida property, her half interest in a boat she and the Debtor jointly purchased, and other personal property.

Lussier filed this adversary proceeding in August 2009. One year later, the Debtor moved to amend his Schedules B and C to include a "Submariner Rolex Watch (used)" worth $1,760, and claimed it as exempt. In his motion, the Debtor argued that the Rolex "could not be authenticated due to its condition but based on eBay comparables, which appear to be in better condition, the watch could be worth as much as $1,760." The Debtor also explained unpersuasively that he had delayed filing the amendment until the trustee informed the Debtor that he (the trustee) had no interest in the watch.

In November 2010, a trial was held on the merits of Lussier's complaint. Lussier appeared pro se, and the Debtor was represented by counsel. Twenty exhibits were introduced into evidence and the Debtor was the only witness. During a colloquy among the trial judge, Lussier, and Debtor's counsel, the bankruptcy judge addressed the issue whether Lussier had standing as a creditor, and held that the Debtor failed to establish that Lussier was not a creditor. The other dispositive issue was whether Lussier satisfied her burden to establish that the Debtor knowingly and fraudulently made a false oath with respect to material facts, by omitting and undervaluing his assets.

The bankruptcy court took the matter under advisement and issued a Memorandum in which it found that the Debtor intentionally and fraudulently omitted and undervalued assets on Schedule B, including a Rolex watch, the bank account, and the 1970 Chevelle. In her written decision, the bankruptcy judge addressed how the omission(s) and/or undervaluation of these assets influenced her in determining that the Debtor's discharge should be denied. This appeal followed.

## II. The Evidence in the Bankruptcy Court

### A. The Omission of the Rolex Watch

Although he did not list it on his original Schedule B, at trial the Debtor admitted that he owned a Rolex when he filed for relief, but explained that he sold the watch Lussier gave him and replaced it with two different watches purchased from Hingham Jewelers. He gave one watch to his girlfriend and kept the other, which he wore to the § 341 meeting. On cross-examination, the Debtor admitted that the receipt for the two Rolex watches clearly indicated Hingham Jewelers as a Rolex dealer. The Debtor testified that several months prior to filing his bankruptcy petition, he attempted unsuccessfully to sell his Hingham Jewelers Rolex watch at a pawn shop in Newport, Rhode Island, and that because the serial number and Rolex crown hologram on the back of the watch had worn off, it could not be authenticated as a genuine Rolex.

### B. The Inconsistent Representations Regarding the Bank Account

On Schedule B, the Debtor listed a Citizens Bank checking account containing $300. At trial, the Debtor testified that he remembered having exactly $264 in the account at the time he filed his petition. The Debtor further explained that he "informally" monitored the account balance through his check register, and ATM and bank receipts, and admitted that he did not keep track of his money very well. Also, "at the time, money came in; money went out," and he made most payments in cash. On cross-examination, Lussier clearly established that the Debtor had $1,840 in the account on the petition date. Contrary to his sworn representation on Schedule B, the Debtor explained that in response to interrogatories he stated, "what I represented in my bankruptcy

Schedule B is accurate as related to cash in my pocket at the time of filing."

## C. The Undervaluation of the Chevelle

On Schedule B, the Debtor listed a 1970 Chevrolet Chevelle worth $9,500. In 2005, the Debtor purchased the Chevelle via eBay for $33,433, and insured the vehicle for $39,000 based upon the opinion of a licensed appraiser. He then took the vehicle to a shop for minor repairs, where it was vandalized. The Debtor never filed an insurance claim for the alleged damage.

Thereafter, the Debtor brought the Chevelle to Ash's Auto Body ("Ash's") to repair the vandalism damage. At Ash's, he learned that the initial assessment of the Chevelle was flawed, i.e., in disassembling the car, Ash's found rot and other structural damage. While the exact dates are unclear, it appears from the record that Ash's started repairing the Chevelle prepetition and that the repair work extended over approximately a one and one-half year period. The Debtor testified that Ash's performed approximately $23,000 in repairs on the Chevelle, and the bankruptcy court noted that the interrogatories stated that the Debtor's parents paid Ash's more than $25,000 in labor charges, and $3,792 for parts.

Notwithstanding such large expenditures, the Debtor valued the Chevelle at $9,500 based on a *NADA Blue Book* value at the time of filing, and testified, based on his knowledge of classic cars, that his car was not worth as much as an original because his vehicle was compromised by having too many incorrect parts. Specifically, the Debtor testified that Mr. Ash told him that his Chevelle had a Buick Skylark clip on a Chevrolet Chevelle frame and body.[3]

In addition to the initial insurance appraisal, the bankruptcy court considered two other appraisals of the vehicle. In her written decision, the bankruptcy judge thoroughly discussed the technical aspects of each appraisal. One appraiser estimated that the vehicle would bring $15,000–$20,000 in a commercially reasonable liquidation sale, and another valued it at $27,300. Neither appraiser mentioned that the car had non-matching parts.

## JURISDICTION

Before considering the merits of an appeal, the Panel must determine whether it has jurisdiction, even if the litigants have not raised the issue. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724, 725–26 (1st Cir. BAP 1998). Bankruptcy appellate panels have jurisdiction to hear appeals from "final judgments, orders, and decrees" pursuant to 28 U.S.C. § 158(a)(1) or, "with leave of the court, from interlocutory orders and decrees" pursuant to 28 U.S.C. § 158(a)(3). *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646. "The Panel has repeatedly ruled that a judgment denying discharge under § 727 is a final order." *Gagne v. Fessenden (In re Gagne)*, 394 B.R. 219, 224 (1st Cir. BAP 2008) (citing *Fagnant v. Cohen Steel Supply, Inc. (In re Fagnant)*, 337 B.R. 729 (1st Cir. BAP 2006)) (internal citations omitted). The Panel has jurisdiction to hear this appeal.

## STANDARD OF REVIEW

Appellate courts reviewing appeals from the bankruptcy court apply *de*

---

3. "Clipping" a car describes using two wrecked cars to repair or create a new car.

*See* Christopher Jensen, *Is Your Car a 'Clip Job'?*, Chicago Tribune, October 5, 2008.

*novo* review to conclusions of law, and the "clearly erroneous" standard to findings of fact. *See Aja v. Emigrant Funding Corp. (In re Aja)*, 442 B.R. 857, 860 (1st Cir. BAP 2011). A bankruptcy court's decision to deny discharge under § 727(a)(4)(A) is reviewed only for clear error, with "due regard ... to the opportunity of the bankruptcy court to judge the credibility of witnesses." Fed. R. Bankr.P. 8013; *see Boroff v. Tully (In re Tully)*, 818 F.2d 106, 109 (1st Cir.1987); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). "A finding is clearly erroneous when, although there is evidence to support it, the Panel is left with the definite impression that a mistake has been made." *Yules v. Gillis (In re Gillis)*, 403 B.R. 137, 142 (1st Cir. BAP 2009) (citing *Gray v. Travelers Ins. Co. (In re Neponset River Paper Co.)*, 231 B.R. 829, 830–31 (1st Cir. BAP 1999)). Thus, the Panel must uphold the bankruptcy court's ruling "if any reasonable view of the proof supports denial of the discharge (and absent any error of the law)." *In re Tully*, 818 F.2d at 109.

### DISCUSSION

#### I. Standing

The Debtor argues that Lussier is not a creditor and that she therefore lacks standing to object to discharge. In support, the Debtor contends that: listing Lussier as an unsecured priority claim holder is not proof that she is a creditor; the bankruptcy court never designated Lussier as a creditor; Lussier has never referred to herself as a creditor; and Lussier has not filed a proof of claim. Further, the Debtor explains, the check from the refinancing is evidence that he satisfied Lussier's claim.

■ The issue of standing is jurisdictional and can be raised by the parties or by the court at any time. *See U.S. v. AVX Corp.*, 962 F.2d 108, 116 n. 7 (1st Cir.1992); *see also Warchol v. Barry (In re Barry)*, 451 B.R. 654, 660 (1st Cir. BAP 2011); *Sentinel Trust Co v. Newcare Health Corp. (In re Newcare Health Corp.)*, 244 B.R. 167, 172 (1st Cir. BAP 2000). Lussier's standing was briefly addressed at trial. The bankruptcy judge, when considering whether to admit the refinancing check as a full exhibit, stated that the check was not proof that the Debtor had satisfied Lussier's claim, or that Lussier was not a creditor.

■ Section 727(c) provides the basis for standing to object to discharge. Generally, the trustee, a creditor, or the United States Trustee may object to the debtor's discharge or the dischargeability of certain debts. *See* 11 U.S.C. § 727(c)(1); *see also* Fed. R. Bankr.P. 4007(a). Thus, whether Lussier has standing here turns on whether Lussier is a "creditor." A creditor is any "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10). A claim is a "right to payment, whether or not such a right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5).

In this case, the facts are that long after he issued the check, the Debtor still considered Lussier a creditor, i.e., when he filed this petition he listed Lussier as a creditor as to two debts. Those schedules also classify Lussier's claims to be not "contingent," "unliquidated," or "disputed". The Debtor has not amended his schedules regarding Lussier's claims and did not raise the issue of standing in his answer to her complaint. Lussier was not required to file a proof of claim, as this is a chapter 7 no-asset case. These undisputed

836

facts provide ample support for a finding that Lussier is a creditor.

■ Moreover, bankruptcy courts have recognized that claims need not be allowed in order to establish a party as a "creditor" under § 727(c)(1). In the Eighth Circuit, the B.A.P. has held that where the debtor listed the Internal Revenue Service (the "IRS") as a creditor, the IRS held a claim qualifying it as a creditor with standing to object to discharge under § 727, even if the claim was ultimately disputed, reduced, or disallowed. *Korte v. United States (In re Korte)*, 262 B.R. 464, 471 (8th Cir. BAP 2001). Similarly a Michigan bankruptcy court, for two main reasons, rejected the debtor's argument that the chapter 7 trustee was not a creditor with standing to object to discharge.

First, nothing in § 727(c) limits standing to object to the discharge to creditors whose claims are first allowed in the bankruptcy case.... If Congress intended to limit standing to only those creditors with allowed claims, it could easily have crafted the statutory language to reflect that intent. Thus, as demonstrated in the text, even a party with a disputed claim is a "creditor." Second, when there are no assets available for distribution, as in most chapter 7 cases, even the filing of claims by creditors, let alone actually litigating such claims, is strongly discouraged. *See* [Bankruptcy Rules] 2002(e) and 3002(c)(5).

*Solomon v. Barman (In re Barman)*, 244 B.R. 896, 899 n. 3 (Bankr.E.D.Mich.2000).

Therefore, based upon the applicable sections of the Bankruptcy Code, the undisputed facts, and the explicit language of *In re Korte* and *In re Barman*, the Panel recognizes Lussier as a creditor with standing to object to discharge under § 727(c)(1).

## II. Ineffective Assistance of Counsel

Citing to *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Debtor argues that he did not have effective assistance of counsel during trial. While this argument is without merit and hardly deserves further attention, we address it briefly.

■ "The United States Supreme Court has held that there is no Sixth Amendment right to counsel in civil cases." *Ferrell v. Countryman*, 398 B.R. 857, 866 (E.D.Tex.2009) (citing *Lassiter v. Dep't of Soc. Servs. of Durham County*, 452 U.S. 18, 24–28, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)). Specifically, an indigent debtor does not have a right to appointed counsel in bankruptcy proceedings; "neither the Bankruptcy Code, Bankruptcy Rules, or Federal Rules authorize appointed counsel for individual debtors in bankruptcy matters." *Id.* at 866 & n. 3 (quoting *Nat'l City Bank v. Flowers (In re Flowers)*, 83 B.R. 953, 954 (Bankr.N.D.Ohio 1988)); *see also Villareal v. Laughlin (In re Villarreal)*, 304 B.R. 882, 886 (8th Cir. BAP 2004). Therefore, the Panel declines to extend the constitutional right to effective assistance of counsel to the bankruptcy context. Here, the Debtor cannot claim ineffective assistance of counsel where he does not have a Sixth Amendment right to counsel in a bankruptcy proceeding. *Cf. Ferrell*, 398 B.R. at 866 n. 3.

## III. Denial of Discharge

Finally, the Debtor asserts that there is no evidence to support the bankruptcy court's findings that he intentionally and fraudulently omitted and undervalued assets. The Debtor argues generally that he was not aware that his statements on Schedule B were false when he made them, i.e., at the time he filed the bankruptcy petition.

Section 727(a) sets forth "generic categories of circumstances which can forestall a debtor's receipt of a discharge in bankruptcy." *In re Tully*, 818 F.2d at 110. Section 727(a)(4)(A) governs this appeal and provides in pertinent part as follows:

> (a) The court shall grant the debtor a discharge, unless—
>
> . . .
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>
> (A) made a false oath or account;
>
> . . .

11 U.S.C. § 727(a)(4)(A).

The First Circuit has dissected the language of § 727(a)(4)(A) into two parts: (1) the plaintiff must show that the debtor knowingly and fraudulently made a false oath; and (2) the false statement must relate to a material fact. *See In re Tully*, 818 F.2d at 110. Further, "the burden of proof rests with the [plaintiff] but once it reasonably appears that the oath is false, the burden falls upon the [debtor] to come forward with evidence that he has not committed the offense as charged." *Id.* (citing *In re Shebel*, 54 B.R. 199, 202 (Bankr.D.Vt.1985) and quoting *In re Mascolo*, 505 F.2d 274, 276 (1st Cir. 1974)) (internal quotation marks omitted).

### A. Knowingly and Intentionally Made a False Oath

The first element is satisfied "if the debtor knows the truth and nonetheless wilfully and intentionally swears to what is false." *Gordon v. Mukerjee (In re Mukerjee)*, 98 B.R. 627, 629 (Bankr.D.N.H. 1989). In the First Circuit, " 'reckless indifference to the truth' . . . has consistently been treated as the fundamental equivalent of fraud for purposes of § 727(a)(4)(A)," *In re Tully*, 818 F.2d at 112, and "[a]ccording to the plain language of § 727(a)(4)(A), all that is required for a denial of discharge is a single 'false oath or account.' " *Smith v. Grondin (In re Grondin)*, 232 B.R. 274, 277 (1st Cir. BAP 1999). Here, the bankruptcy court concluded that the Debtor intentionally and fraudulently omitted or undervalued three assets: the Rolex watch, the Citizens Bank account, and the Chevrolet Chevelle.

### 1. The Rolex Watch

The Debtor argues that he did not list the Rolex in Schedule B because he believed it had no value, and points out that he obviously did not attempt to conceal the Rolex, evidenced by the fact that he wore it to the § 341 meeting. The Debtor also emphasizes that when he eventually became aware of its value, he attempted on the eve of trial to correct things by amending Schedule B to include the wristwatch.

First Circuit law suggests, however, that it is a *non sequitor* to equate the right to amend a bankruptcy schedule with a finding of good faith. *Vasiliades v. Dwyer*, No. Civ.A. 05–10479–FDS, 2006 WL 1494081, at *4 & n. 14 (D.Mass. May 23, 2006) (citing *In re Wood*, 291 B.R. 219, 229 (1st Cir. BAP 2003)) ("To the extent the Bankruptcy Court 'approved' the Debtor's motions to amend, its approval was ministerial, and by no means a final determination as to the issue of intent."). Here, there is nothing in the record to indicate that the bankruptcy court committed clear error in denying discharge based on the omission of the Rolex watch from the original Schedule B, saying that the Debtor "proffered no legitimate excuse for his failure to list the watch on Schedule B." The bankruptcy judge also noted that while the Rolex may not have been worth as much as it once was, it certainly was not worthless, given Hingham Jewelers' receipt.

The bankruptcy judge noted that "[t]he Debtor's decision to amend Schedule B in August of 2010, shortly before the commencement of the trial, is indicative of the Debtor's belated concession that the Rolex watch should have been disclosed as an asset at the commencement of the case." The timing of the Debtor's amended Schedule B supports an inference of his intent to defraud, and he did not amend Schedule B until a year and a half after he filed the original Schedule B and nearly one year after Lussier filed her complaint. Here, the bankruptcy court found that the demeanor and behavior of the Debtor was indicative of his intent to make a false oath, and there is nothing in the record to suggest that the trial court's findings and conclusions were clearly erroneous.

## 2. The Citizens Bank Account

The Debtor argues that he did not knowingly undervalue the Citizens Bank account at $300, because he misunderstood the significance of the petition date, explaining that the value of the account was $300 at the time he signed the petition, but that funds increasing the account balance to $1,840 were deposited into the account by the time his lawyer filed the petition. Therefore, the Debtor seeks to place responsibility on his former counsel for failing to explain to him that the operative date of the bankruptcy is the filing date, and not the date the Debtor signs the petition. Nowhere in the record below, however, did the Debtor raise an issue that he misunderstood the concept of petition date. Instead, he impermissibly raises this possible misunderstanding for the first time on appeal, and even if this issue were properly before the Panel, it has no merit.

The Debtor was clearly inconsistent in his explanations of the $300 entry. The bankruptcy court found that the Debtor's attempt to equate "cash on hand" with the amount in his bank account was "unavail-ing," referencing the Debtor's statement on cross-examination, "what I represented in my bankruptcy Schedule B is accurate as related to cash in my pocket at the time of filing." Even if there were the possibility that the Debtor misunderstood the concept of "petition date," the bankruptcy court reasonably found that the evidence supported the conclusion that the Debtor knowingly made a false oath on Schedule B. *See In re Tully*, 818 F.2d at 109. In all but the most exceptional circumstances, such calls are for the trial court to make.

## 3. The Chevrolet Chevelle

Finally, the Debtor argues that he did not knowingly or intentionally misrepresent the value of the Chevelle, because he learned that the car had both structural and cosmetic damage only after he purchased it. The bankruptcy court acknowledged that determining whether the Debtor intentionally undervalued the Chevelle was a "more difficult issue" than the other assets due to varying appraisals and valuations that took place over a period of five years. The bankruptcy court noted, however, that if in fact the Debtor overbid on the Chevelle, he took no action against the seller, and neither of the two licensed appraisers noted any structural defects that rendered the vehicle worth less than what the Debtor originally paid.

The bankruptcy judge also considered that the appraisers all valued the Chevelle from double to triple the amount assigned to the car by the Debtor, using the *NADA Blue Book*, as well as the fact that the Debtor's parents paid more than $25,000 for repairs and restoration of the car, to find that the Debtor knew the car was worth far more than $9,500. In addition, the Debtor admitted on cross-examination that he no longer believed the car was worth $9,500, and admitted in his brief that "at the time the Debtor filed his bankruptcy petition, the Chevelle had gained value." For these reasons, the Panel con-

cludes that the bankruptcy court's determination that the Debtor "intentionally undervalued the vehicle in order to retain it and benefit from its potential appreciation in value" was not clearly erroneous. Rather, her rulings, findings, and conclusions are well supported by the record.

### B. Materiality

■ The second element required to deny discharge under § 727(a)(4)(A), that the debtor's statement is materially related to the bankruptcy case, is satisfied if the statement "bears a relationship to the [debtor's] business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of property." *Commonwealth of Massachusetts v. Sohmer (In re Sohmer)*, 434 B.R. 234, 250 (Bankr.D.Mass. 2010) (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir.1984)). Courts have acknowledged that "the threshold to materiality is fairly low." *Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 347 (8th Cir. BAP 2000) (citing *In re Chalik*, 748 F.2d at 618). On appeal, the parties do not dispute the materiality of the Debtor's statements, and in fact, the Debtor admits that the subject matter of the alleged false oaths concerns the discovery of assets—the omitted Rolex watch and the undervalued bank account and Chevelle. Therefore these statements are material.

### CONCLUSION

Based on the foregoing discussion, the Panel concludes that the bankruptcy judge's denial of the Debtor's discharge pursuant § 727(a)(4)(A) was not clearly erroneous, and that the judgment appealed from should be and hereby is **AFFIRMED.**