In re Robert R. GRONDIN, Debtor.

Timothy P. Smith, Chapter 7 Trustee,
Plaintiff/Appellee,

v.

Robert R. Grondin,
Defendant/Appellant.

BAP No. NH 98–050.

United States Bankruptcy Appellate Panel
of the First Circuit.

April 21, 1999.

Robert M. Koch, Concord, NH, for Robert R. Grondin, defendant—appellant.

Timothy P. Smith, Trustee, Manchester, NH, Michael S. Askenaizer, Law Offices, Nashua, NH, for Timothy P. Smith, Trustee, Chapter 7 Trustee, plaintiff—appellee.

Before DE JESÚS, HILLMAN, and CARLO, U.S. Bankruptcy Judges.

HILLMAN, Bankruptcy Judge.

## I. *Introduction*

The matter before the Bankruptcy Appellate Panel is the Debtor's appeal of the bankruptcy court's denial of his discharge pursuant to 11 U.S.C. § 727(a)(4)(A). The Bankruptcy Appellate Panel has jurisdiction over this appeal pursuant to 28 U.S.C. § 158. We affirm the decision below.

## II. *Factual Background*

The facts of this case are, for the most part, uncontested. On or about July 19, 1995, Robert R. Grondin (the "Debtor"), William H. Kelley ("Kelley") and Robert J. Covino ("Covino") formed Primrose of Penacook, LLC ("Primrose"). Primrose was formed to buy and develop nineteen lots in a subdivision in Penacook, New Hampshire. Kelley and Covino each invested $150,000 for their respective one-third interests in Primrose. Instead of capital, the Debtor contributed services in exchange for his one-third interest. At the time Primrose was formed, the Debtor was the sole shareholder in three other corporations: Trebor Development Corporation ("Trebor"), RG Construction, and Babl Enterprises. Through these three corporations, the Debtor was to perform certain services related to the subdivision's infrastructure, such as road work, curbing, and the installation of utilities, and water and sewage systems. On February 6, 1997, in order to obtain cash desperately needed for his primary business, Trebor, the Debtor assigned his one-third interest in Primrose in equal shares to Kelley and Covino, for which he received $30,000 (the

"February 6 Transaction").[1] The Debtor's failure to disclose this transaction forms the basis of the bankruptcy court's denial of his discharge pursuant to § 727(a)(4)(A).[2]

On March 18, 1997, approximately forty days after the February 6 Transaction, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code.[3] On April 14, 1997, the Debtor filed his Statement of Financial Affairs, which did not disclose the February 6 Transaction. On April 21, 1997, at the section 341 meeting of creditors, the Debtor again failed to disclose the February 6 Transaction.

On June 18, 1997, the Chapter 7 Trustee (the "Trustee") learned for the first time of the Debtor's ownership interest in Primrose during an interview of Lee Ann Keniston, the Debtor's wife. The next day, June 19, 1997, the Trustee's attorney, Michael S. Askenaizer ("Askenaizer"), wrote the Debtor's attorney, Robert M. Koch ("Koch"), requesting information relating to Primrose and noting that no mention of Primrose had been made in the Debtor's Schedules or Statement of Financial Affairs (the "June 19 letter"). The Debtor did not respond to this request for information. On June 27, 1997, approximately one week after receiving the June 19 letter, the Debtor amended his Chapter 7 Schedules, yet did not disclose the February 6 Transaction. On August 4, 1997 and September 8, 1997, the Debtor produced numerous documents in response to the Trustee's earlier discovery request, but still did not disclose the February 6 Transaction. On October 14, 1997, the Trustee filed his complaint objecting to the Debtor's discharge based on his failure to disclose the February 6 Transaction. Even

this action did not prompt the Debtor to amend his Statement of Financial Affairs. It was not until March 11, 1998, approximately one year after filing his bankruptcy petition, that the Debtor did so.

### III. Discussion

Under § 727(a)(4)(A), a bankruptcy court may deny a debtor's discharge only if three elements are satisfied: the debtor must have (i) knowingly and fraudulently, (ii) made a false oath, (iii) relating to a material fact. See Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir.1987); Burrell v. Sears (In re Sears), 225 B.R. 270, 274 (Bankr.D.R.I.1998). It is undisputed that the Debtor made a false oath when he omitted the February 6 Transaction from his Statement of Financial Affairs. A debtor's Schedules and Statement of Financial Affairs are unsworn declarations made under penalty of perjury and are, according to federal law, the equivalent of a verification under oath. See Sears, 225 B.R. at 274; Casey v. Kasal (In re Kasal), 217 B.R. 727, 734 (Bankr. E.D.Pa.1998); 28 U.S.C. § 1746. The Debtor's failure to disclose the transfer of his interest in a corporation for consideration of $30,000 is also undeniably a material false oath. See Tully, 818 F.2d at 110–11 (holding materiality element satisfied when subject matter of false oath "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of property.").

The substance of the Debtor's appeal concerns the bankruptcy court's finding that the false oath was made

---

1. The $30,000 figure was arrived at by the three co-owners after it was agreed that, as of February 6, 1997, the Debtor had contributed approximately $70,000 worth of services and had earlier received a distribution of $34,061.33 from Primrose. The Debtor subsequently loaned the $30,000 to Trebor.

2. Section 727(a)(4)(A) provides:

(a) The court shall grant the debtor a discharge, unless—
    . . . .
(4) the debtor knowingly and fraudulently, in or in connection with the case—
    (A) made a false oath or account; . . . .

3. On the same date, Trebor also filed for relief under Chapter 7 of the Bankruptcy Code.

"knowingly and fraudulently." The Debtor makes essentially two arguments in this regard, one legal and one factual. First, he asserts that his omission of the February 6 Transaction cannot be the basis of a denial of discharge because § 727(a)(4)(A) requires a "pattern" of such misconduct. According to the Debtor, a single omission from the Statement of Financial Affairs, as a matter of law, cannot be the basis of a denial of discharge under that section. We review the bankruptcy court's contrary legal conclusion *de novo*. *Rhode Island Depositers Economic Protection Corp. v. Hayes (In re Hayes)*, 229 B.R. 253, 258 (1st Cir. BAP 1999). We disagree with the Debtor's contention. According to the plain language of § 727(a)(4)(A), all that is required for a denial of discharge is a single "false oath or account." *See Torgenrud v. Schmitz (In re Schmitz)*, 224 B.R. 149, 152 (Bankr.D.Mont.1998) (finding fraudulent intent when debtor failed to disclose her current, married name); *Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657, 662 (Bankr.E.D.N.Y.1993) (finding fraudulent intent when debtor failed to disclose his equitable interest in marital home); *First National Bank of Mason City, Iowa v. Cook (In re Cook)*, 40 B.R. 903, 907 (Bankr.N.D.Iowa 1984) (finding fraudulent intent when Debtor failed to disclose his transfer of a parcel of real estate one month prior to filing bankruptcy petition).

■ Although a quantity of omissions may strengthen the inference that a debtor had the requisite fraudulent intent under § 727(a)(4)(A), the quality of a debtor's omissions merits consideration as well. In the present case, the Debtor omitted from his Statement of Financial Affairs a significant transaction ($30,000) which occurred only forty days prior to the filing of his bankruptcy petition. We cannot say that such an omission, as a matter of law, cannot be the basis for denial of discharge. To hold otherwise would, as the Trustee suggests, entitle every debtor to one free omission from his bankruptcy schedules.[4]

■ The Debtor next argues that, given the record before it, the bankruptcy court's finding that the Debtor "knowingly and fraudulently" made a false oath or account was clearly erroneous. We review the bankruptcy court's findings of fact for clear error and note that deference to that court's findings is particularly appropriate in the present case because a "determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor." *Williamson v. Fireman's Fund Ins. Co. (In re Williamson)*, 828 F.2d 249, 252 (4th Cir. 1987); *see also Sears*, 225 B.R. at 275–76; *Montey Corp. v. Maletta (In re Maletta)*, 159 B.R. 108, 112 (Bankr.D.Conn.1993). For the purposes of § 727(a)(4)(A), a debtor's "reckless indifference to the truth . . .

---

4. The cases cited by the debtor do not persuade us otherwise. In *Phillips v. Phillips (In re Phillips)*, 187 B.R. 363 (Bankr.M.D.Fla. 1995), after detailing a litany of omissions, misstatements, and undervaluations in the debtor's schedules and statement of financial affairs, the bankruptcy court concluded that, "[a]lthough any one of these omissions or incorrect statements in isolation would unlikely provide a basis for the denial of his discharge, the Court finds that the [debtor's] carelessness in completing his petition papers and his vague responses to questions regarding those errors indicates a reckless disregard for the truth." *Id.* at 370–72. We agree that many of the omissions in *Phillips,* for example the debtor's failure to disclose his ownership of camping equipment, a vacuum cleaner, a compact disk player, a carpet cleaner, and a

canoe, *see id.* at 370, in isolation would unlikely support an inference that a debtor fraudulently made a false oath. This, however, does not mean that a single omission can *never* be the basis for the denial of a debtor's discharge. Statements made in the other cases relied on by the Debtor are similarly equivocal, not to mention dicta. *See Youngblood v. Hembree (In re Hembree)*, 186 B.R. 530, 532 (Bankr.M.D.Fla.1995) ("Although a single omission would normally be insufficient to deny the debtor's discharge, . . . .") (emphasis added); *Kalvin v. Clawson (In re Clawson)*, 119 B.R. 851, 852–53 (Bankr. M.D.Fla.1990) ("While any one of the omissions from the Debtor's Schedules alone *probably* would not constitute a false oath and *may* not evidence a fraudulent intent, . . . .") (emphasis added).

has consistently been treated as the functional equivalent of fraud." *Tully*, 818 F.2d at 112 (citing *Diorio v. Kreisler–Borg Construction Co.* (*In re Diorio* ), 407 F.2d 1330, 1331 (2nd Cir.1969) (per curiam)). The bankruptcy court relied on the following facts to support the inference that the Debtor, at the very least, displayed a reckless indifference to the truth:

> First, the transaction was recent. Second, the transaction was substantial and material. Third, the Defendant had almost thirty days after filing bankruptcy to prepare his schedules and statement of affairs, a sufficient period of time to get it right. Fourth, no mention of the transaction was made at the § 341 meeting of creditors. Fifth, the Trustee only learned of the transaction from the Debtor's wife and not the Debtor.

Memorandum Opinion at 4.

The Debtor argues in his brief that his omission of the February 6 Transaction was inadvertent and that he had simply forgotten about it. The bankruptcy court considered the Debtor's testimony to that effect and found it wanting, given the "recent and substantial" nature of the transaction. Memorandum Opinion at 4. We do not find the bankruptcy court's finding clearly erroneous.

■ The Debtor also argues that his failure to respond to the June 19 letter

requesting information on the February 6 Transaction was attributable to his decision to continue working toward compliance with the Trustee's earlier request for discovery. To that end, on August 4, 1997, the Debtor eventually turned over 324 pages of documents which he contends were also responsive to the June 19 letter. Specifically, the Debtor asserts that three of the 324 pages contained information pertaining to Primrose. We are not impressed with the Debtor's efforts. It is troubling that the Debtor failed to respond immediately to Askenaizer's June 19 letter, which clearly put him on notice that his schedules were deficient.[5] The Debtor's eventual turnover of documents fell far short of the remedial measures which may have saved the Debtor's discharge.[6] The three documents which the Debtor claims contained information on Primrose appear to be tax forms which refer to Primrose but are in no way responsive to Askenaizer's request for information. As the First Circuit has stated, "[a] petitioner cannot omit items from his schedules, force the trustee and the creditors, at their peril, to guess that he has done so—and hold them to a mythical requirement that they search through a paperwork jungle in the hope of finding an overlooked needle in a documentary haystack." *Tully*, 818 F.2d at 111.[7]

---

**5.** In his letter to Koch, Askenaizer wrote:

> On June 18, 1997 Tim Smith and I met with Lee Ann Keniston, the spouse of Robert R. Grondin, your client. Ms. Keniston during the course of our meeting advised us that Mr. Grondin prior to the filing of his bankruptcy petition held an ownership interest in an entity known as Primrose of Penacook, LLC, and that he disposed of the same a few months prior to the filing of the bankruptcy petition.... *There is no mention made of this business entity in Mr. Grondin's bankruptcy schedules.* Please investigate, and provide myself and Mr. Smith with any relevant information.... (emphasis added).

**6.** It should be noted that even a more immediate and substantial response may not necessarily have remedied the earlier false oath. *See Martin v. Bajgar* (*In re Bajgar* ), 104 F.3d 495, 497 (1st Cir.1997) (retransfer does not

cure a fraudulent transfer for purposes of § 727(a)(4)(A)); *Nof v. Gannon* (*In re Gannon* ), 173 B.R. 313, 320 (Bankr.S.D.N.Y. 1994); *Villas on the Green, Inc. v. Trauger* (*In re Trauger* ), 101 B.R. 378, 382 (Bankr. S.D.Fla.1989).

**7.** The Debtor makes various other arguments which we find have little merit. For example, he claims that his turnover of documents on August 4, 1997 and September 8, 1997, some of which refer to Primrose, demonstrates that it was clear error for the bankruptcy court to find that the Trustee "only learned of the transaction from the Debtor's wife *and not the Debtor.*" Appellant's Brief at 28–29 (citing Memorandum Opinion at 4) (emphasis added). However, the clear implication of the bankruptcy court's finding was that the Trustee *first* learned of the February 6 Transaction

While we are mindful that the statutory right to a discharge is to be construed liberally in favor of the debtor and that the denial of discharge should not be based on "merely technical and conjectural" grounds, *see Tully,* 818 F.2d at 110 (citation omitted), the Debtor in the present case displayed a "reckless indifference to the truth" warranting denial of his discharge. A debtor's failure to make necessary disclosures impairs the "Trustee's ability to perform his statutorily imposed obligations at the expense of the creditors and, therefore, cannot be sanctioned." *Sullivan v. Tracey (In re Tracey),* 76 B.R. 876, 881 (Bankr.D.Mass.1987).

## IV. *Conclusion*

For the reasons stated above, we affirm the bankruptcy court's denial of the Debtor's discharge pursuant to 727(a)(4)(A).

SO ORDERED.

from the Debtor's wife rather than from the Debtor, which is a relevant consideration in the determination of intent. *See Gillickson v. Brown (In re Brown),* 108 F.3d 1290, 1295 (10th Cir.1997) (fact that debtor comes forward with omitted material of his own accord is strong evidence that there is no fraudulent intent).