# United States Court of Appeals
## For the First Circuit

No. 15-2269

IN RE:  PATRICK J. HANNON; ELIZABETH HANNON,

Debtors.

PATRICK J. HANNON,

Plaintiff, Appellant,

v.

ABCD HOLDINGS, LLC; ABC&D RECYCLING, INC.;
WARE REAL ESTATE, LLC,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before
Kayatta and Barron, Circuit Judges,
McAuliffe,* District Judge.

Matthew R. Johnson, with whom Joshua M. Wyatt and Devine,
Millimet & Branch, P.A. were on brief, for appellant.
Joel E. Faller, with whom McLaughlin Brothers, P.C. was on
brief, for appellees.

October 7, 2016

_____

**McAULIFFE, District Judge**.  Patrick J. Hannon ("Hannon") appeals from the entry of summary judgment denying his petition for a discharge in bankruptcy.  See 11 U.S.C. § 727(a)(4)(A).  The bankruptcy court denied the discharge after concluding that Hannon made false material statements with respect to disbursements made on his behalf by third parties during the bankruptcy proceeding. The district court affirmed the bankruptcy court's entry of summary judgment, and we affirm as well.

## I.  Background

### A.  Factual Background

In May of 2012, Hannon and his wife, Elizabeth, sought protection from their creditors by filing a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code.[1]  The Hannons reported total assets of about $6 million, and liabilities of approximately $10.4 million, which included a disputed tax debt of more than $7 million.

Hannon owned and operated a recycling and scrap metal company, ABC&D Recycling, Inc. ("ABC&D Recycling"), as well as a real estate company, Ware Real Estate, LLC ("Ware Real Estate"), which held title to the land on which ABC&D Recycling was located.

---

[1]  On January 2, 2013, the case was converted to a Chapter 7 proceeding, upon motion of the United States Trustee.

- 2 -

The Hannons estimated that monthly expenses necessary to support their family during the bankruptcy process would average about $13,180, and noted that the income required to pay those expenses would come from ABC&D Recycling's ongoing operations while Hannon served as debtor-in-possession.

**ABC&D Recycling and Ware Real Estate**

Hannon bought ABC&D Recycling and Ware Real Estate with the help of an attorney named George McLaughlin, Esq., who had previously represented Hannon. McLaughlin owned a financing company, Bright Horizon Finance, LLC ("Bright Horizon"), which loaned Hannon the necessary funds. Bright Horizon's loan terms included warrant rights, affording it the option to purchase a 50.1 percent interest in each company. On June 21, 2012, after the Hannons filed for bankruptcy protection, Bright Horizon assigned its warrant to ABCD Holdings, LLC ("ABCD Holdings"), another company controlled by McLaughlin, and, on July 17, 2012, ABCD Holdings exercised those warrant rights, thereby obtaining a 50.1 percent ownership interest in both Ware Real Estate and ABC&D Recycling.

A few weeks earlier, on June 27, 2012, McLaughlin, suspecting that business funds were being diverted by Hannon for unauthorized purposes, obtained an ex parte temporary restraining

- 3 -

order from the Suffolk County Superior Court. That order temporarily barred Hannon from ABC&D Recycling's premises. On July 2, 2012, however, that order was modified to allow Hannon to resume operational control over the business. A short time later, on July 18, 2012, ABCD Holdings removed Hannon as an officer of Ware Real Estate and appointed McLaughlin to replace him. Hannon, however, continued to operate ABC&D Recycling until February 6, 2013, when ABCD Holdings removed him as an officer and director of that company as well. On March 13, 2013, the bankruptcy court approved the sale of Hannon's remaining minority interest in both Ware Real Estate and ABC&D Recycling to ABCD Holdings.

**Hannon's Monthly Operating Reports**

Hannon was required to file monthly operating reports ("MORs") on a standardized form with the United States Trustee's office. He did so from May through September of 2012. Hannon says that he provided his counsel with bank statements from the debtor-in-possession accounts and, based on those statements, counsel completed the necessary forms for him. Hannon then reviewed the forms and signed a certification on each MOR which declared "under penalty of perjury" that the report was true and correct "to the best of [his] knowledge and belief."

- 4 -

The MOR forms require, among other things, that a debtor affirmatively disclose whether funds have been disbursed for the debtor's benefit from any account other than a debtor-in-possession account, and, if so, to provide an explanation for such payments.  Here, that would include disclosure of disbursements made by ABC&D Recycling and Ware Real Estate for Hannon's benefit.  The MOR form also instructs the debtor to report the amount of estate disbursements made by outside sources.  On all of the relevant MORs, Hannon reported that funds had been disbursed for his and his wife's benefit from an account other than a debtor-in-possession account.  In May and June of 2012, for example, Hannon's MORs identified $1,407.24 and $2,830.30, respectively, as "payments from ABC&D for rent and utilities."  Hannon's September MOR also disclosed that funds had been disbursed from "ABC&D for rent and utilities," but reported that no amount ("0") had been disbursed for the estate's benefit from outside sources.  Hannon's July and August MORs contained no reference to disclosable payments from ABC&D Recycling, and reported "0" estate disbursements made by outside sources.

**Companies Object to Discharge**

On July 12, 2013, ABCD Holdings, ABC&D Recycling, and Ware Real Estate (the "Companies") filed an adversary complaint

- 5 -

against Hannon in the bankruptcy proceeding, objecting to his discharge in bankruptcy. Based upon a forensic accounting analysis of the books and records of ABC&D Recycling and Ware Real Estate, the Companies alleged that while Hannon was in control of the businesses, he diverted a substantial amount of business revenue to his own benefit, without authority. According to the Companies, business funds were diverted by means of: (1) Hannon's use of business accounts to pay Hannon's entirely personal expenses; (2) Hannon's withdrawal of funds from business bank accounts for entirely personal use; and (3) Hannon's and his family members' use of business debit cards to cover entirely personal expenses. The Companies asserted that Hannon did not disclose receipt of the majority of those diverted funds on his MORs, as required. They charged that Hannon diverted approximately $99,000 from ABC&D Recycling and Ware Real Estate between May and September of 2012, during which period he only identified approximately $4,200 in disbursements made on his behalf on the MOR forms.

On November 21, 2013, the Companies moved for partial summary judgment on their claim that, because Hannon made a false oath or filed a false account in connection with his bankruptcy proceeding, he should be denied a discharge. 11 U.S.C.

§ 727(a)(4)(A). Hannon, acting pro se,[2] opposed the motion but did not deny that the disbursements identified by the Companies actually occurred. Instead, he contended that virtually all of the identified expenditures were made for business purposes, and not for his personal benefit. And, he argued, some expenditures that appeared to be for his personal benefit were actually made by, or on behalf of, other employees.

**Hannon's Proffered Defenses**

A hearing was held in the bankruptcy court on the Companies' motion. The bankruptcy court questioned Hannon about the transactions at issue. Hannon denied that the identified disbursements were made for his personal benefit, stating that nearly all of them ("99.9 percent of them") had a business purpose. The bankruptcy court took the matter under advisement, but offered Hannon the opportunity to "spell out in detail" his defenses to the multiple diversion claims.

Hannon then retained new legal counsel, who filed a further brief in opposition to the Companies' motion for partial

---

[2] Hannon initially had the benefit of retained counsel to assist him in navigating the bankruptcy process, but was unable to maintain that representation. The bankruptcy court allowed counsel to withdraw by order dated July 13, 2013, after which Hannon acted pro se. He then retained new counsel after a hearing on the Companies' motion for partial summary judgment.

summary judgment.  Hannon retreated from his earlier claim that 99.9 percent of the disbursements had a business purpose, but included an affidavit in which he declared that many of the disbursements and withdrawals from business accounts actually had a business purpose.  He also filed an affidavit by Jeffrey M. Dennis, CPA, in which Dennis opined that laypersons (like Hannon, who had a high school education) typically lack the necessary training to accurately complete MORs.  Finally, Hannon provided the court with an unsworn attachment to his memorandum, in the form of a spreadsheet, detailing his explanations for each of the disbursements challenged by the Companies.  Hannon's explanations were divided into three categories:  1) those expenditures that Hannon "believe[d] were incurred for his benefit," 2) those that he "believe[d were] incurred for legitimate business purposes," and 3) those that he claimed were incurred for both a personal and a business purpose.

Hannon conceded that $19,323.22 in business disbursements were "incurred for his benefit."  Those transactions included eleven cash withdrawals, which Hannon labeled as "Stipends to Joint Debtor" (his wife); two paychecks to Hannon from ABC&D Recycling; $7,500 in rent payments made to Hannon's landlord; $1,500 in payments to a boat storage facility in Maine;

retail purchases for groceries, clothing, and entertainment; and video game and music purchases made by Hannon's daughters on a business debit card.[3]

Hannon identified $77,155.91 of the challenged disbursements as having a business purpose, including substantial cash withdrawals used to make cash payments for scrap metal, expenses related to business travel, and expenses associated with transporting and feeding ABC&D Recycling employees.[4]  He included within that category costs associated with two of his homes, one in Wells, Maine, and another in Truro, Massachusetts.  According to Hannon, those vacation homes were used for entertaining potential ABC&D clients, so costs associated with maintaining those homes, as well as monies spent entertaining clients while in residence, qualified as business expenses.  Disbursements were made to cover costs for utilities, landscaping, local hardware and liquor store purchases, and meals at nearby restaurants.

---

[3]     Hannon stated that he "believe[d]" the stipends to the Joint Debtor and his paychecks were reported on the MORs.

[4]     The bankruptcy court pointed out that Hannon included within the "business expense" category three disbursements he had previously listed on his Addendum to the May and June MORs as paid by ABC&D Recycling:  a $97.84 payment to Dish Network, a $355.76 payment to NSTAR Electric, and a $178.89 payment to a Hannaford grocery store.  Hannon cryptically described those payments as business expenses relating to "client guest house," "company utility," and "ABC&D grocery," respectively.

Finally, Hannon identified $2,849.99 of the questioned disbursements as having both a personal and a business purpose. He included within that final category utility payments related to his Wells and Truro homes.

Hannon had previously given testimony concerning his Wells and Truro homes at a June 6, 2012, meeting of creditors. In response to questioning by counsel to the United States Trustee, Hannon said that he and his family used the Wells home only occasionally and during the day, and that it needed significant work (as a result of major leaks and a dysfunctional heating system) to make it rentable. The Truro vacation home, he said, was used only "once in a while" and otherwise remained unoccupied. He did not mention any marketing or other business entertainment uses of either property.

## B. **Procedural History**

On June 10, 2014, after fully considering the matter, the bankruptcy judge granted summary judgment in favor of the Companies and declined to grant Hannon a discharge in bankruptcy. 11 U.S.C. § 727(a)(4)(A). The court found, as Hannon admitted, that over $19,000 in payments by ABC&D Recycling or Ware Real Estate were made for Hannon's personal benefit, and that the majority of those payments were not disclosed on the MORs, as

required.  The bankruptcy court found that Hannon's affidavit explanations for the claimed business expenditures related to his Wells and Truro homes were directly contradicted by his earlier testimony at the creditors' meeting, and that Hannon provided no explanation for the substantive change.  Accordingly, the bankruptcy court determined that Hannon failed to raise a genuine issue of material fact with respect to whether the business payments relating to his Wells and Truro houses were "in fact incurred solely for his personal benefit."

The bankruptcy court took note of the extent and frequency of Hannon's omissions, as well as the fact that Hannon had partially disclosed payments made for his benefit by ABC&D Recycling in his May and June MORs.  From the undisputed facts, the bankruptcy court determined that the "only plausible conclusion is that [Hannon] acted with reckless indifference to the truth when filing his MORs."  The court decided that it was unnecessary to consider the additional disbursements at issue, because Hannon admitted sufficient unreported payments made on his behalf to resolve the motion for summary judgment.

Hannon appealed to the district court.  The district court affirmed the bankruptcy court's order on September 22, 2015. This appeal followed.

## II. Standard of Review

As recently noted in Rok Builders, LLC v. 2010-1 SFG Venture, LLC, (In re Moultonborough Hotel Group, LLC), "[a]lthough we constitute the second tier of appellate review in this case arising out of a decision by the bankruptcy court in an adversary proceeding, 'we cede no special deference to the determinations made by the . . . district court' and instead 'assess the bankruptcy court's decision directly.'" 726 F.3d 1, 4 (1st Cir. 2013) (quoting City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.), 656 F.3d 82, 87 (1st Cir. 2011)). Our review of the bankruptcy court's order granting summary judgment is de novo. Desmond v. Varrasso (In re Varrasso) 37 F.3d 760, 763 (1st Cir. 1994) (citations omitted); see also Daniels v. Agin, 736 F.3d 70, 78 (1st Cir. 2013).

The bankruptcy court entered summary judgment under Federal Rule of Bankruptcy Procedure 7056, which expressly "incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure." In re Varrasso, 37 F.3d at 762. Accordingly, the "legal standards traditionally applicable to motions for summary judgment . . . apply without change in bankruptcy proceedings." In re Moultonborough Hotel Grp., LLC, 726 F.3d at 4 (citations omitted). Summary judgment

- 12 -

in bankruptcy proceedings, then, should be granted "only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law."  In re Varrasso, 37 F.3d at 763.  "[A]ll reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant."  Id.

### III.  Discussion

We begin with a basic principle.  "Under [11 U.S.C.] § 727(a)(4)(A), [a] debtor can be refused his discharge only if he (i) knowingly and fraudulently made a false oath, (ii) relating to a material fact."  Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987).  As the moving parties, the Companies must establish that there is no genuine dispute about any material fact, and that they are entitled to judgment as a matter of law, because: (1) Hannon made a false statement under oath in the course of his bankruptcy proceeding; (2) he did so knowingly and fraudulently; and (3) the false statement related to a material fact.  Perry v. Warner (In re Warner), 247 B.R. 24, 26 (B.A.P. 1st Cir. 2000).  As we have previously recognized:

> [11 U.S.C. § 727], by its very nature, invokes competing considerations.  On the one hand, bankruptcy is an essentially equitable remedy.  As the [Supreme] Court has said, it is an "overriding consideration that equitable principles govern the exercise of bankruptcy

- 13 -

jurisdiction." Bank of Marin v. England, 385 U.S. 99, 103 (1966). In that vein, the statutory right to a discharge should ordinarily be construed liberally in favor of the debtor. Matter of Vickers, 577 F.2d 683, 687 (10th Cir. 1978); In re Leichter, 197 F.2d 955, 959 (3d Cir. 1952), cert. denied, 344 U.S. 914 (1953); Roberts v. W.P. Ford & Son, Inc., 169 F.2d 151, 152 (4th Cir. 1948). "The reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural." Dilworth v. Boothe, 69 F.2d 621, 624 (5th Cir. 1934).

On the other hand, the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. As we have stated, "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." [Matter of] Mascolo, 505 F.2d [274,] 278 [(1st Cir. 1974)].

In re Tully, 818 F.2d at 110 (parallel citations omitted). With these principles in mind, we turn to Hannon's arguments on appeal.

## A. False Oath

The bankruptcy court, invoking the principle that "an unsworn declaration made under penalty of perjury is the equivalent of a verification under oath," determined that, because Hannon signed the MORs under penalty of perjury, his statements on those forms were made under oath. 28 U.S.C. § 1746; Smith v. Grondin (In re Grondin), 232 B.R. 274, 276 (B.A.P. 1st Cir. 1999). Hannon

- 14 -

challenges that determination on appeal, arguing that the certification required by MORs is not the type of certification covered by § 1746, which contemplates a certification as "true and correct," and not one based on a subjective understanding. Therefore, he argues, his MOR certifications were not made under "oath," as necessary to support a false oath claim.

Hannon concedes that he presents the argument for the first time on appeal. "[T]herefore, we can consider the argument waived." Hoover v. Harrington (In re Hoover), 828 F.3d 5, 11 (1st Cir. 2016) (quoting Net-Velazquez v. Wiscovitch-Rentas (In re Net-Velazquez), 625 F.3d 34, 40 (1st Cir. 2010) ("[A]bsent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal.")). However, even if Hannon had presented the argument to the bankruptcy court, it would have likely failed. The verification language used on the MOR is nearly identical to the verification language used on debtor bankruptcy schedules.[5] Other

---

[5]    The MOR certification reads:  "I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and all attachments are true and correct to the best of my knowledge and belief."

The "Declaration Concerning Debtor's Schedules" reads:  "I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of ___ sheets, and that they are

- 15 -

circuit courts that have addressed the point have consistently found the language used on the debtor schedules sufficient to constitute a verification under oath for purposes of § 727(a)(4)(A). See, e.g., Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010) ("A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath.") (quoting Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (B.A.P. 9th Cir. 2007)); Beaubouef v. Beaubouef (Matter of Beaubouef), 966 F.2d 174, 178 (5th Cir. 1992) ("False oaths sufficient to justify the denial of discharge include . . . a false statement or omission in the debtor's schedules") (internal quotations omitted) (quoting 4 Collier on Bankruptcy ¶ 727.01[1], at 727-59 (15th ed. 1992); Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 618 n.3 (11th Cir. 1984) ("A knowing and fraudulent omission from a sworn Statement of Affairs or schedule may

true and correct to the best of my knowledge, information and belief."

- 16 -

constitute a false oath.") (citing <u>Farmers Coop. Ass'n</u> v. <u>Strunk</u>, 671 F.2d 391, 395 (10th Cir. 1982)).[6]

We do not discern any principled basis upon which to draw a meaningful distinction between the certification language used on the MOR form from that used on a debtor's schedules, and think the nearly identical language used on the MOR form would likely constitute a verification under oath for § 727(a)(4)(A) purposes. "Sworn statements filed in any court must be regarded as serious business. In bankruptcy administration, the system will collapse if debtors are not forthcoming." <u>In re Tully,</u> 818 F.2d at 112. So, while it is unlikely that Hannon would prevail, the issue is forfeited in this case due to Hannon's failure to raise it below.

## B. "Knowingly and Fraudulently"

Hannon's main argument on appeal relates to the bankruptcy court's determination that there was no genuine issue of material fact with respect to his state of mind when he filed the MORs. Hannon asserts that the bankruptcy court incorrectly

---

[6] While the point seems not to have been directly confronted by this court, it has been assumed, for purposes of § 727(a)(4)(A), that omissions and false statements on a debtor's schedules constitute statements made under oath. <u>See</u>, <u>e.g.</u>, <u>In re Tully</u>, 818 F.2d at 110.

concluded that the undisputed facts established his knowing and fraudulent state of mind as a matter of law.  Relying upon our decision in In re Varrasso, 37 F.3d at 764, he argues that the undisputed facts here--as in In re Varrasso--do not point to only one conclusion about his state of mind, but instead support "conflicting yet plausible inferences--inferences that are capable of leading a rational factfinder to different outcomes in a litigated matter depending on which of them the factfinder draws." Id.  Because the undisputed facts require a choice between two plausible, and conflicting, inferences (reckless conduct or merely careless conduct), he argues, summary judgment was improper.

Hannon says the undisputed facts support an inference that he acted carelessly, but not recklessly.  He stresses that he had no reason to conceal the business disbursements made for his personal benefit because, even including those disbursements, his actual monthly expenses were still significantly lower than the monthly support amount he estimated would be needed at the outset of the bankruptcy proceeding.  So, no harm, and no intent, given no evident reason for him to conceal those disbursements. He also notes that his formal education ended with high school, and he could well have misinterpreted the complicated bankruptcy forms.  Moreover, he points out that he relied on legal counsel

to prepare the forms. Those facts should render a culpable mental state doubtful, he contends.

Hannon also points to his "good faith" participation in the bankruptcy process, and his improved reporting practices over time, which also should tend to negate any inference of an intent to deceive. Finally, Hannon argues that accurate MOR reporting was necessarily hampered by his lack of access to underlying financial documentation about the businesses. Files and records were missing, he says, after the brief hiatus between the issuance of the temporary restraining order and his resumption of control over ABC&D's operations when the restraining order was modified. All of which, Hannon argues, would readily support a legal conclusion that he acted carelessly, but did not act with reckless indifference to the truth.

A debtor "knowingly and fraudulently" makes a false oath if he "knows the truth and nonetheless willfully and intentionally swears to what is false." Lussier v. Sullivan (In re Sullivan), 455 B.R. 829, 837 (B.A.P. 1st Cir. 2011) (internal quotation marks and citations omitted). "[R]eckless indifference to the truth" has "consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A)." In re Tully, 818 F.2d at 112 (citations omitted); accord In re Grondin, 232 B.R. at 277.

We of course recognize that it has been repeatedly emphasized, and remains true today, that "[c]ourts use special caution in granting summary judgment as to intent. Intent is often proved by inference, after all, and on a motion for summary judgment, all reasonable inferences must be drawn in favor of the nonmoving party." Daniels, 736 F.3d at 83. But, "[s]ummary judgment may be warranted even as to such elusive elements as a defendant's motive or intent where the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 5 (1st Cir. 1998) (quotations and citations omitted). Here, there are no genuine disputes regarding material facts, and construing the undisputed facts and all reasonable inferences arising from those facts in favor of Hannon, it is still clear that the entry of summary judgment was proper.

First, Hannon's reliance on In re Varrasso, 37 F.3d 760, is misplaced, because the undisputed facts here do not support plausible opposing inferences. Hannon concedes that he did not report at least $8,500 in business payments made for his personal benefit on the MORs he filed in May through September of 2012.[7]

---

[7] Hannon takes issue with the bankruptcy court's categorization of some of the questioned expenditures as personal

His explanation for those omissions amounted to little more than assertions that, either he did not understand his obligation to truthfully report those disbursements, or he failed to accurately

---

and unreported on the MORs.  He argues that the bankruptcy court calculated the undisputed and unreported personal expenditures as totaling $23,555.54, but $10,092.98 of that amount was factually disputed.  Actually, the bankruptcy court recognized that Hannon reported $4,237.54 of ABC&D Recycling's payments on his MORs, so the amount unreported on the MORs was "over $19,000."  Hannon says he believed that $4,037 in cash stipends to Elizabeth Hannon were reported on the MORs, because they were included in deposits to Elizabeth Hannon's bank account, and so were recorded in bank statements attached to the MORs.  The MORs, however, do not identify any such deposits as "stipends" or income from the business.

Hannon further argues that the expenditures of $3,205.09 and $2,849.99 relating to his Wells and Truro homes were "business" or "business and personal" expenses.  That argument is equally unavailing.  Hannon's affidavit is plainly inconsistent with his prior testimony at the creditors' meeting, and he offers no adequate explanation for the dramatic change.  See Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F. 3d, 1, 4-5 (1st Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.").

But, even if we accepted Hannon's contentions, he cannot escape the fact that he admitted to receiving at least $12,830.97 from ABC&D Recycling and Ware Real Estate between May and September of 2012.  He reported only $4,237.54 on his MORs.  Hannon cannot, and does not, dispute that he failed to report over $8,500 in reportable payments that ABC&D Recycling and Ware Real Estate made for his personal benefit on the MORs he submitted between May and September 2012.

report them because he was merely careless. Neither explanation is supported by the factual record.

To be sure, "a debtor's honest confusion or lack of understanding may weigh against an inference of fraudulent intent." Robin Singh Educ. Servs., Inc. v. McCarthy (In re McCarthy), 488 B.R. 814, 827 (B.A.P. 1st Cir. 2013). But, Hannon did properly report some business disbursements made for his personal benefit in May and June of 2012. As the bankruptcy court recognized, those May and June disclosures "demonstrate[] that [Hannon] understood his duty to report such transactions, and was able to obtain the necessary information to do so." As the bankruptcy court also recognized, the "magnitude of the omissions belies the Debtor's assertions that he merely overlooked" reporting a few small personal transactions. In this case Hannon reported a few modest personal transactions; it was the multiple and substantial disbursements made for his benefit that did not make it to the MORs. Moreover, unlike the debtors in Varrasso, Hannon did not rectify the omissions as soon as the creditors' questioning brought them to light. In re Varrasso, 37 F.3d at 764.

At issue here is not a simple failure to report minor expenditures for miscellaneous expenses. Rather, Hannon

- 22 -

repeatedly failed to report thousands of dollars diverted from the businesses for his benefit, while he controlled those businesses. He cannot plausibly contend that he did not know that the businesses paid for his personal rent, clothing, and groceries, as well as his daughters' clothing and entertainment, over a five-month period. Considered in context, "[t]he amounts here render reckless errors that arguably may have been only negligent if they had concerned less significant items." Daniels, 736 F.3d at 85.

Hannon's claim that he relied in good faith on legal counsel to accurately prepare the forms also founders. As Hannon himself concedes, "reliance on the advice of counsel is no defense when the deficiency 'should have been evident to the debtor.'" Appellant's Br. at 20 (quoting Tully, 818 F.2d at 111). Hannon's argument is undermined both by his demonstrated knowledge of what was required to be disclosed, and his undeniable knowledge that substantial sums spent on his behalf were not disclosed on the forms filled out by counsel--forms that he reviewed and signed under oath.

Hannon also asserts that a reasonable factfinder could well conclude that he lacked the financial acumen to understand and appreciate the MORs deficiencies. But, as discussed above, in May and June of 2012 Hannon did properly report disbursements

made for his benefit.  He plainly demonstrated personal awareness of what disclosures were required, and clearly was not unaware that business disbursements made for his benefit had to be reported.  It, therefore, "should have been evident" to Hannon that the July, August, and September MORs did not disclose substantial business expenditures made for his benefit.  Appellant's Br. at 20 (quoting In re Tully, 818 F.2d at 111).  As we have warned, "[a] debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath."  In re Tully, 818 F.2d at 111.[8]

While Hannon has no formal training in financial reporting, still, he is hardly unsophisticated.  Until recently, he owned and successfully operated two businesses.  He entered bankruptcy having accumulated assets of nearly $6 million.  Moreover, this is not Hannon's first experience with bankruptcy filings and reports.  Hannon acknowledges that he was "previously

---

[8]    As the bankruptcy court pointed out, Hannon testified that he "provid[ed] counsel with statements from [his] debtor-in-possession accounts, and then reviewed the report prepared by counsel."  But no evidence suggests that he provided counsel with full access to relevant financial information, including information regarding payments made by the businesses on his behalf.

- 24 -

the principal of Embassy Realty, LLC, which had operated as a debtor-in-possession." Hannon's business experience and his past experience with the bankruptcy process undermine his claimed inability to accurately and truthfully complete the MORs due to a lack of financial sophistication.

Finally, Hannon's passing contention that his ability to accurately and truthfully disclose all business expenditures made for his benefit was hampered by missing financial documentation is also implausible. Hannon did not provide any explanation as to how access to the allegedly missing business records was a necessary predicate to his truthfully reporting substantial disbursements made on his behalf. Hannon, of course, did have access to all the financial records of ABC&D Recycling and Ware Real Estate through at least the end of June, 2012, yet still did not accurately and truthfully report disbursements made for his benefit on the May and June MORs. "The record in this case shows, at the very least, cavalier indifference and a pattern of disdain for the truth. Meaningful disclosure was accorded much too low a priority." In re Tully, 818 F.2d at 112.

Reviewing the matter de novo, we recognize this case as one of those uncommon situations in which summary judgment is appropriate notwithstanding that intent, or state of mind, is at

issue. We concur in the bankruptcy court's determination that Hannon's proffered explanations for his significant omissions are so implausible that they do not give rise to a genuine dispute of material fact with respect to his intent.[9]

## C. **Materiality**

The final critical element, that the debtor's statement be materially related to the bankruptcy case, is "satisfied if the statement bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of property." In re Sullivan, 455 B.R. at 829 (quotations omitted).

Neither party disputes on appeal that Hannon's omissions were material. We agree. As the bankruptcy court noted, because Hannon's omissions "prevented parties in interest from accurately assessing the viability of a reorganization or understanding the Debtor's true financial condition," they were material.

## IV. **Conclusion**

---

[9] On these same grounds, we reject Hannon's argument that the bankruptcy court should not have granted summary judgment because the MORs were verified "to the best of his knowledge and belief," and the record would support a finding that he subjectively believed that the information was accurate. As discussed above, the record does not support that inference.

Summary judgment is not commonly available in cases featuring intent as a necessary element, but, as this case illustrates, there are exceptions.  Material statements made in the course of judicial proceedings implicate serious interests, and must be as complete and reliable as studied caution will allow. Reckless indifference cannot be countenanced and will provide no protection from sanctions imposed for making false statements under oath.

For the reasons stated above, we affirm the bankruptcy court's denial of Hannon's discharge pursuant to § 723(a)(4)(A).